# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EUGENE RADFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. CIV-13-976-R |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The Commissioner has answered and filed the administrative record (hereinafter TR. ___). The parties have briefed their positions, and the matter is now at issue. For the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED and REMANDED** for further proceedings consistent with this Report and Recommendation.

## PROCEDURAL HISTORY

Plaintiff's application was denied initially and on reconsideration at the administrative level. At his request, Plaintiff appeared at a hearing before an Administrative Law Judge, (ALJ), who issued an unfavorable decision on February 21,

2012. (TR. 15-29). Plaintiff appealed the ALJ's unfavorable decision to the Social Security Appeals Council, which found no reason to review the ALJ's decision (TR. 1-4). This judicial appeal followed.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to two inquiries: whether the administrative decision was supported by substantial evidence and whether the correct legal standards were applied. *See Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010).

## THE ADMINISTRATIVE DECISION

In addressing Plaintiff's SSI application, the ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 7, 2010, the protective filing date. (TR. 17). At step two, the ALJ determined that Plaintiff has the following impairments, which in combination are severe: a repaired ruptured diaphragm, back pain and abdominal pain resulting from a motor vehicle accident; hypertension; headaches; Bell's palsy; dysthymic disorder; undifferentiated somatoform disorder, pervasive; elements of post-traumatic stress disorder resulting from the motor vehicle accident.; and borderline intellectual functioning. (TR. 17). At step three, the ALJ found that Plaintiff does not have impairments that meet or medically equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 24).

At the first phase of step four, the ALJ assessed Plaintiff's residual functional capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light exertion work as defined in 20 CFR 416.967(b) restricted by: occasional stooping; frequent kneeling, crouching, crawling, balancing and climbing; the claimant can perform simple and some complex task[s]; can relate to others on a superficial work basis; and can adapt to a work situation.

(TR. 25).

At the second phase of step four, the ALJ identified Plaintiff's past relevant work as construction worker, work classified as heavy. Thus, at phase three of step four, the ALJ found Plaintiff unable to return to his past relevant work. (TR. 28).

Moving on to step five, the ALJ relied on the testimony of a vocational expert (VE) and determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy. The VE identified three such jobs which the ALJ adopted: self-service store attendant, fast food worker, and extrusion press operator. (TR. 29). Thus, the ALJ found at step five of the sequential evaluation that Plaintiff was not disabled.

## ISSUES FOR REVIEW

Plaintiff challenges the ALJ's "implicit rejection of the IQ test from Ms. Wilson's examination;" the ALJ's assessment of Plaintiff's RFC; and the ALJ's credibility assessment.

## ANALYSIS

On October 12, 2011, Janice Renee Wilson, a psychometrist, administered the Wechsler Adult Intelligence Scale—Fourth Edition (WAIS—IV), as requested by

Plaintiff's attorney, to determine Plaintiff's general cognitive ability. Ms. Wilson has a Bachelor's Degree in elementary education and a Master's Degree in psychometrics.[1] She works for the Anadarko Schools and is licensed by the State of Oklahoma. (TR. 488).

Ms. Wilson administered 10 subsets of the WAIS-IV. (TR. 481-483). She reported that Plaintiff's general cognitive ability is within the borderline range of intellectual functioning, as is his general verbal comprehension, and his ability to sustain attention, concentration and mental control. Plaintiff's general perceptual reasoning abilities were in the low average range. Plaintiff's ability to process simple or routine visual material, without making errors, was in the extremely low range. (TR. 483).

The ALJ implicitly rejected Ms. Wilson's findings, relying instead on the report of a consultative psychologist, Dr. Raymond M. Fuchs, Ph.D. (TR. 358-363). Dr. Fuchs administered the Wechsler Memory Form 1 (WMF-1), as well as the Millon Multiaxial Inventory III (MMI-III). On the WMF-1 test, Plaintiff was able to say his ABC's in 30 seconds, and, although he left out the letters Q and R, Dr. Fuchs nevertheless found Plaintiff's performance to be in the normal range. Plaintiff counted backwards from 20 in 21 seconds which, according to Dr. Fuchs, is also within the normal range. In attempting to perform Serial 3's, Plaintiff's completion time was 45 seconds, but Dr. Fuchs noted that after the number 19, he started adding 2's instead of 3's. On the Digit Span, portion of the test, Plaintiff was able to remember five digits forward and three

---

[1] "Psychometrics" is defined as "the psychological theory of technique and mental measurements." (Merriam-Webster's Collegiate Dictionary, Tenth Ed.).

digits in reverse. On the Associative Learning in Pairs portion of the test, Plaintiff's memory was acceptable for easily associated items, but he was unable to make any non-direct associative items during the first trial, and only one during the successive trials. Dr. Fuchs assessed Plaintiff's instant memory and recall as fair. Dr. Fuchs noted that Plaintiff "did not appear to strain or present a good deal of effort" on Associative Learning in Pairs portion of the test. (TR. 359).

Dr. Fuchs' findings after administering the MCMI-III to Plaintiff were as follows: TEMPERAMENT TRAITS were assessed as highly avoidant; DEPRESSIVE TRAITS were rated as moderately high; DEPENDENCY TRAITS were assessed as moderate; PERSONALITY FACTORS were judged to be moderately histrionic; AVOIDANT AND SCHIZOID TRAITS were rated as high; SOMATIC CONCERNS were rated as very high; DYSTHYMIC DISORDER was rated as moderate; and symptoms of POST-TRAUMATIC STRESS DISORDER were rated as high. (TR. 359-361). Dr. Fuchs stated that Plaintiff's "Cognitive Function, Power, IQ, appeared average." (TR. 362). Dr. Fuchs also stated, however, that Plaintiff is "easily distracted by his mind wandering off and concentration flagging," that he has an "extremely avoidant type personality which is somewhat schizoid, detached and self-preoccupied by internalized events." (TR. 362). Dr. Fuchs opined that Plaintiff's detachment and self-preoccupation "may have been partially at play in his auto accident." (TR. 362).

Shortly after Dr. Fuchs' examination, but before Ms. Wilson's testing, a State medical consultant, Dorothy Millican-Wynn, Ph.D., completed a Psychiatric Review

Technique form (TR. 369-381), indicating that, secondary to history of depression and somatoform disorder, Plaintiff has moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Dr. Millican-Wynn stated there was insufficient evidence to establish any episodes of decompensation. (TR. 379-381). Dr. Millican-Wynn concluded that Plaintiff is capable of simple and some semi-skilled work. (TR. 381).

On the same date, Dr. Millican-Wynn completed a Mental Residual Functional Capacity Assessment. Her conclusion was that Plaintiff is moderately limited in his ability to understand and remember detailed instructions, moderately limited in his ability to carry out detailed instructions, and moderately limited in the ability to interact appropriately with the general public. (TR. 365-366). Summarizing her functional capacity assessment, Dr. Millican-Wynn concluded that Plaintiff can perform simple and some complex tasks, can relate to others on a superficial work basis, and can adapt to a work situation. (TR. 367). On October 10, 2010, Dr. Cynthia Kampschaefer affirmed the findings of Dr. Millican-Wynn. (TR. 391).

The ALJ concurred with the findings of Dr. Millican-Wynn as affirmed by Dr. Kampschaefer. (TR. 24). In so doing, the ALJ implicitly rejected the findings of Ms. Wilson's test results and interpretations. (TR. 24). Significantly, the opinions of Dr. Millican-Wynn were based only on test results and interpretations of those result obtained from Dr. Fuchs because Dr. Millican-Wynn did not have the benefit of Ms.

6

Wilson's test results. The ALJ's sole reason for rejecting Ms. Wilson's estimates of Plaintiff's IQ, derived from well-recognized, standardized test scores, was that Dr. Fuchs had stated in his report that "[Plaintiff] did not appear to strain or present a good deal of effort" when Dr. Fuchs administered one section of the WMF-1. (TR. 359). The ALJ translated Dr. Fuchs' statement as meaning that "it was not entirely clear that the claimant was always providing best effort[.] " (TR. 24). The undersigned finds that it is not entirely clear that the ALJ's translation of Dr. Fuchs' statement is correct, particularly in light of Dr. Fuchs' conclusion that Plaintiff's primary problem was his depressive state "with associated lack of concentration and motivation." (TR. 363). As discussed above, Dr. Fuchs' assessment of Plaintiff's effort refers to only one section of the WMF-1. (TR. 359). But even if Dr. Fuchs did, indeed, mean that Plaintiff was not making his best effort on all portions of the tests, the ALJ's conclusion that the same "might be true in connection with the claimant's performance on IQ testing by Ms. Wilson" is sheer speculation, as Ms. Wilson did not address the effort Plaintiff made on the tests she administered. Such speculation is not a sufficient reason to completely disregard the test results and associated opinions of Ms. Wilson *See* 20 C.F.R. § 416.927(c)(1)-(6)(detailing the factors an ALJ should consider in determining the weight to be given to a medical source opinion). Moreover, as Plaintiff notes, Dr. Fuchs' testing evaluated Plaintiff's memory, emotional, and personality traits while Ms. Wilson's testing measured Plaintiff's cognitive and intellectual functioning. Therefore, Dr. Fuchs' statements regarding Plaintiff's apparent intellectual functioning were purely anecdotal.

But even though Dr. Fuchs and Ms. Wilson administered tests designed to measure different facets of Plaintiff's mental state, the conclusions of Dr. Fuchs and the conclusions of Ms. Wilson share two important similarities. Both Dr. Fuchs and Ms. Wilson found significant deficits in Plaintiff's ability to think quickly and maintain concentration. (TR. 362-363; 482-483).

The ALJ's reliance on the opinions of Dr. Fuchs and the State agency medical consultant regarding Plaintiff's cognitive functioning would be understandable if Dr. Fuchs' test results were the only such evidence in the record. However, given the test results and opinions based on Ms. Wilson's testing, to which the State agency medical consultant did not have access, this Court cannot say the ALJ's Mental RFC is supported by substantial evidence.

Aside from the failure to consider Ms. Wilson's test results and interpretations, even Dr. Fuchs' test results and interpretations, based on testing of memory and personality traits, fail to support the ALJ's mental RFC determination. Dr. Fuchs opined that Plaintiff's avoidant and schizoid traits are high. (TR. 360). Dr. Fuchs' conclusions portray a man with a questionable ability to relate to others, even on a superficial work basis, or to adapt to work situations:

> [Plaintiff] has always displayed a somewhat loaner lifestyle. He dropped out of school in the ninth grade and worked at a variety of jobs in a primarily rural area of Oklahoma. He has worked in farm labor, oilfield related work and carpentry. He has never married and suffered an auto accident with serious injuries approximately two years ago. He still has residual effects that are traumatizing from the accident. However, it would appear he may have had [premorbid] generalized

> anxiety of life issues about adjusting to mid-life processes, aging concerns and health matters. These were accentuated by the accident. He becomes fearful[,] but more than any other dynamic[,] feels depressive elements with associated lack of concentration and motivation.

(TR. 363).

This description does not support Dr. Millican-Wynn's mental residual functional capacity assessment. On remand, the ALJ should specify the weight he is giving to each medical opinion, using the factors detailed in 20 C.F.R. § 416.927(c)(1)-(6). The ALJ should also, if necessary, further develop the record by soliciting the opinions of State agency consultants who would have access to all the evidence in the record.

Because Plaintiff's first two assignments of error require remand, this Court need not address Plaintiff's challenge to the ALJ's credibility assessment.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED and REMANDED** for further administrative proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **December 1, 2014**. The parties are

further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on November 17, 2014.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE